# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELYSSA HORNER, *individually and on behalf of those similarly situated*,<br><br>              Plaintiff,<br><br>   v.<br><br>OCEANFIRST BANK, N.A., *et al.*,<br><br>              Defendants. | No: 3:19-cv-08711-GC-TJB |

**NAMED PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS SETTLEMENT, ATTORNEYS' FEES AND COSTS, SERVICE AWARDS, AND SETTLEMENT ADMINISTRATION FEES**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES ......................................................................................... 3

INTRODUCTION ......................................................................................................... 5

LEGAL ARGUMENT ................................................................................................... 6

    I.    The Settlement Should Be Approved, In Accordance with the *Girsh* Factors .................. 6

        A.    The Complexity, Expense, and Likely Duration of the Litigation Favors Final Approval of the Settlement (*Girsh* Factor 1). ............................................................. 7

        B.    The Reaction of the Class has been Positive (*Girsh* factor 2). ..................................... 8

        C.    The Stage of the Proceedings and Amount of Discovery Completed (*Girsh* Factor 3). 9

        D.    The Risk of Establishing Liability (*Girsh* Factors 4). ................................................. 10

        E.    The Risk of Establishing Damages (*Girsh* Factors 5). ............................................... 13

        F.    The Risk of Maintaining the Class Action Through Trial (*Girsh* Factor 6). .............. 15

        G.    The Ability of Defendant to Withstand a Greater Judgment (*Girsh* Factor 7) ........... 16

        H.    The Settlement is Within a Fair and Reasonable Range Based Upon the Attendant Risks of Litigation and the Best Possible Recovery (*Girsh* Factors 8 and 9). ....................... 17

    II.    The Court Should Award The Requested Attorneys' Fees And Costs ............................ 18

        A.    Size of the Fund and Number of Persons Benefitted .................................................... 21

        B.    No Objections to Class Counsel's Fee and Costs Request ......................................... 22

        C.    Skill and Efficiency of Class Counsel ........................................................................ 22

        D.    Hours Worked and Risk of Non-Payment .................................................................. 23

        E.    Awards in Similar Cases .............................................................................................. 24

        F.    Lodestar Cross-check ................................................................................................... 25

        G.    The Court Should Award Class Counsel Reimbursement of Their Out-of-Pocket Costs 27

    III.    The Court Should Award The Settlement Administrator Its Fees ................................ 27

    IV.    This Court Should Award The Requested Service Payments For Named Plaintiff Horner and Opt-in Plaintiff Cheeseborough .......................................................................... 28

CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Albanese v. Bergen Cnty.*, 991 F. Supp. 410 (D.N.J. 1997) .......................................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 15

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946) .............................................................. 13

*Ayala v. U.S. Xpress, Inc.*, 2019 U.S. Dist. LEXIS 64928 (C.D. Cal. 2019) ............................... 26

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................................... 19

*Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663 (D.N.J. 2011) ............... passim

*Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599 (D.N.J. 2012) ................. 7

*Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235 (D. Utah 2015) ............................ 23

*Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009) ............................ 20, 21

*Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985) 19, 25

*Deitz v. Budget Renovations & Roofing, Inc.*, 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. 2013) .... 7

*Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191 (3d Cir. 2014) ........................... 20

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ....................................... 7

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010) .............................................. 25

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .......................................................... 6

*EnviroFinance Group, LLC v. Environmental Barrier Co., LLC*, 440 N.J. Super. 325 (Sup. Ct.
   App. 2015) ................................................................................................................................. 11

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ..................................................................... 6, 7, 9

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ............................................... 20

*Gwynn v. City of Phila.*, 719 F.3d 295 (3d Cir. 2013) ................................................................. 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ............................................................ 6

*In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. 2001) .......... 27

*In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226 (E.D. Pa.
   2009) .......................................................................................................................................... 29

*In re AT&T Corp.*, 455 F.3d 160 (3d Cir. 2006) ........................................................ 19, 20, 24, 25

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............... 9

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162
   (E.D. Pa. 2004) .......................................................................................................................... 27

*In re Cendant*, 2001 U.S. App. LEXIS 19214 (3d Cir. 2001) ....................................................... 9

*In re Elec. Carbon*, 447 F. Supp. 2d 389 (D.N.J. 2006) ............................................................. 29

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) 8, 20, 21, 24

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ............................ 22

*In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ..................................................... 20

*In Re Prudential Ins*, 148 F.3d 283 (3d Cir. 1998) ..................................................... 9, 15, 19, 25

*In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 (D.N.J. 2005) ........... 29

*In re Safety Components Int'l*, 166 F. Supp. 2d 72 (D.N.J. 2001) ............................................ 9, 14

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)................................... 6, 9, 16

*Inmates of the Northumberland County Prison v. Reish*, 2011 U.S. Dist. LEXIS 46600 (M.D. Pa. 2011) .......................................................................................................................................... 9

*Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014) ..................................................... 11

*Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889 (E.D. Pa. 2014) ............................... 23

*Kirsch v. Delta Dental*, 534 Fed. Appx. 113 (3d Cir. 2013)......................................................... 25

*Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006) ................. 17, 20

*Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114 (3d Cir. 2008).................................... 7

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) .............................................................. 12

*McGee v. Anne's Choice, Inc.*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2014).................... 23, 26

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................... 6

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012).............................................................. 9

*Rouse v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 49347 (E.D. Pa. 2015)............................ 21, 24

*Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979) ........................................................ 6

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990)......................................................... 8

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994) ............................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 6, 25

*Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 92337 (E.D. Pa. 2011)...... 11

## Other Authorities

NEWBERG ON CLASS ACTIONS (4th ed. 2002) .............................................................................. 6

# INTRODUCTION

On April 12, 2023, this Court preliminarily approved the pending class and collection action settlement. (ECF 74). Pursuant to the Joint Stipulation of Settlement and Release (the "Agreement"), Defendant OceanFirst Bank, N.A. ("Defendant" or "OceanFirst") will pay $525,000 to settle all claims in this action. The settlement resolves all claims, including allegations that Defendant failed to pay for all hours worked, including overtime, in violation of the Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law ("NJWHL"), the New Jersey Wage Payment Law ("NJWPL"), and New Jersey common law.

While the settlement reached might not provide class members with the equivalent of their best day in court, it clearly provides class members with substantially more than they would receive on their worst day in court, and the class is accepting of this result. The settlement administrator CAC Services Group, LLC ("Settlement Administrator") sent the Notice of Class and Collective Action Settlement ("Notice") to the Settlement Class[1] of 815 individuals. The Notice detailed the terms and conditions of the settlement and how Class Members could object or opt out of the Rule 23 class action settlement. To date, not a single Class Member has objected to the settlement, and only two (2) Class Members have opted out of the settlement. This positive reaction demonstrates the Settlement Class is pleased with the settlement, believes the settlement to be fair, and wants to be paid without delay. Moreover, as explained herein, all relevant factors this Court is to examine when determining the fairness of the settlement weigh heavily in favor of approving it.

---

[1] For purposes of this Memorandum of Law, Named Plaintiff incorporates by reference the Definitions contained in the Agreement. ECF Doc. 70-4. Defined terms not otherwise defined herein are defined in the Agreement.

Named Plaintiff Elyssa Horner ("Named Plaintiff") also moves for approval of the requested service awards, Class Counsel's requested attorney's fees and costs, and the requested Administrator's fees.

For the reasons stated above and fully briefed below, this Court should grant Named Plaintiff's motion in its entirety.

## LEGAL ARGUMENT

### I.   The Settlement Should Be Approved, In Accordance with the *Girsh* Factors

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). In exercising this discretion, courts

6

should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

For the final approval stage, the Third Circuit has adopted a nine-factor test, the so-called "*Girsh* factors," to determine the reasonableness and fairness of a class action settlement, which district courts have also used when reviewing settlements of FLSA collective actions: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157 (3d Cir. 1975); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 179 (3d Cir. 2012); *see also Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114, 120 (3d Cir. 2008) (applying *Girsh* factors to determine if settlement of hybrid Rule 23/FLSA claims was reasonable); *Deitz v. Budget Renovations & Roofing, Inc.*, 2013 U.S. Dist. LEXIS 75005 (M.D. Pa. 2013) (applying *Girsh* factors to determine reasonableness of FLSA settlement); *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599 (D.N.J. 2012) (applying *Girsh* factors to determine reasonableness of FLSA settlement and noting that other courts in the Third Circuit have done the same).

As explained herein, an analysis of the *Girsch* factors supports final approval.

**A.    The Complexity, Expense, and Likely Duration of the Litigation Favors Final Approval of the Settlement (*Girsh* Factor 1).**

The first *Girsh* factor weighs in favor of the settlement. The litigation involves complex allegations that OceanFirst violated the FLSA and New Jersey law by failing to properly pay

7

Class Members for non-overtime hours and overtime hours. Specifically, Named Plaintiff alleges Defendant required the Class Members and her to perform specific branch-opening procedures prior to clocking in and without compensation. Settling at this time, early procedure-wise, is the best outcome for both Parties because further litigation would impose significant risk and expense on both sides and could take more years before any resolution is reached. Miller Decl. ¶ 18. Named Plaintiff would need to engage in extensive, formal fact discovery to establish liability, damages, and to show that collective and class certification is appropriate. *Id.* Named Plaintiff also would have had to engage an expert to perform damage calculations using Defendant's time and pay data. *Id.* The Parties would expect significant briefing on motions for collective and class certification, decertification, and summary judgment and, if the Court determines factual disputes bar summary judgment, the case would go to trial, a time- and resource-intensive endeavor. *Id.* Even after summary judgment or trial, the losing party likely would appeal. *Id.* This settlement provides significant relief to the Settlement Class in relation to their claims in a manner that limits risk and duration. *Id.*

Therefore, this factor weighs in favor of final approval.

**B.    The Reaction of the Class has been Positive (*Girsh* factor 2).**

In determining the reaction of the class, "courts look to the number and vociferousness of the objectors." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995).

As noted above, the Administrator sent the Notice to the 815 individuals comprising the Settlement Class who all worked in New Jersey. Declaration of Jeffrey D. Johnson, CAC Services Group, LLC ("CAC"), attached hereto as Exhibit A, at ¶ 6. The Notice sent to Class Members informed them how to object to the settlement and how they could opt out. To date, not

a single Class Member has objected to the settlement, and only two (2) Class Members (0.3%) have opted out of the settlement. Johnson Decl. at ¶¶ 9-10.

This positive reaction of the Settlement Class demonstrates that the class is satisfied that settlement is fair. This reaction strongly supports approval here. *See, e.g. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting the second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) (finding the second *Girsh* factor weighed in favor of approving settlement when one objection was filed and 3 opt-outs received in a class of 441 members); *Inmates of the Northumberland County Prison v. Reish*, 2011 U.S. Dist. LEXIS 46600 (M.D. Pa. 2011) (finding same where court received 4 objections in a class of 200 members).

Accordingly, the positive reaction of the Settlement Class satisfies the second of the *Girsh* factors and weighs in favor of approving the settlement.

> **C.    The Stage of the Proceedings and Amount of Discovery Completed (*Girsh* Factor 3).**

The third factor is "the stage of the proceedings and the amount of discovery completed." *Girsh*, 521 F.2d at 157. This factor "captures the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant*, 2001 U.S. App. LEXIS 19214, at *16 (3d Cir. 2001). "Through this inquiry, it can be determined whether counsel had an adequate appreciation of the merits of the case before negotiation." *In re Safety Components Int'l*, 166 F. Supp. 2d 72, 86 (D.N.J. 2001), *quoting In Re Prudential Ins*, 148 F.3d 283, 319 (3d Cir. 1998). "The stage of the proceedings are measured by reference to the commencement of proceedings either in the class action at issue or some related proceeding." *Id.*

The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations omitted).

Here, although preparing this case through collective and class certification, dispositive motion practice, and trial would require extensive, further formal discovery for both sides, the Parties have completed enough informal and formal discovery to understand the strengths and weaknesses of the case and, accordingly, were able to appropriately negotiate and recommend a settlement. Specifically, Defendant produced, *inter alia*, a substantial sample of time and pay records for branch employees (*i.e.,* for 50 randomly-selected putative class members employed throughout the 78 branches OceanFirst operated at the time of selection), written policies regarding its opening procedures and time-keeping systems, and a randomly-selected sample surveillance camera footage of the opening procedures being performed. The Parties also served responses to each other's interrogatories and requests for production. Accordingly, the Parties fully understood the potential value and the strengths and weaknesses of the case when they negotiated the settlement.

Thus, the third *Girsh* factor is also satisfied and weighs in favor of approving the settlement.

### D.    The Risk of Establishing Liability (*Girsh* Factors 4).

While Named Plaintiff remains confident that she could establish damages and liability on a class-wide basis and prevail at trial, it is clear that such an endeavor poses inherent and

10

substantial risks of non-recovery to the Settlement Class. Defendant has disputed its liability on all claims, asserted a number of substantive and procedural defenses to liability and, even assuming liability may be found, maintained that there would be no damages or that damages would be limited.

Defendant maintains the opening procedures were not compensable under the FLSA, as they were not principal work activities or activities that were intrinsic to Named Plaintiff's principal activities as a bank teller but, rather, preliminary activities excluded from the FLSA definition of compensable work in light of the Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 35-37 (2014).

While Named Plaintiff maintains that such duties are compensable under the NJWHL, as that statute did not adopt the Portal-to-Portal Act limitations on compensable work, and compensable under the FLSA as they were principal duties in and of themselves, she recognizes neither the New Jersey Supreme Court nor the Third Circuit have weighed in on these respective questions yet and, therefore, there is risk that the Court may disagree with either or both arguments.

As to Named Plaintiff's straight-time claims under New Jersey common law, it is not certain that Named Plaintiff would be able to establish there is a violation for failing to pay an employee for time during which the employees understood they were not receiving compensation. To prove unjust enrichment, Named Plaintiff must show that she and Class Members "'expected remuneration'" for this time. *EnviroFinance Group, LLC v. Environmental Barrier Co., LLC*, 440 N.J. Super. 325, 350 (Sup. Ct. App. 2015) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)).

Defendant also asserted at all times that to the extent any work was compensable, the time spent performing same was legally *de minimis* and, accordingly, not compensable pursuant to the FLSA, NJWHL, and common law. "The FLSA does not require employers to compensate non-exempt employees for *de minimis* quantities of time spent working before and after shifts." *Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 92337, at *8 (E.D. Pa. 2011). Thus, if this case were litigated to trial, Named Plaintiff would need to prove that the time they worked was not *de minimis*. *Albanese v. Bergen Cnty.*, 991 F. Supp. 410, 422 (D.N.J. 1997). To determine if a particular task is *de minimis*, courts consider "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Williams*, 2011 U.S. Dist. LEXIS 92337, at *9; *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984). While Named Plaintiff believes the regularity and the aggregate amount of time class-wide would sufficiently defeat such a defense, Named Plaintiff and Class Counsel recognize there are no guarantees in litigation, and it would be presumptuous to believe that either Party knows how this Court would rule on such a defense.

Furthermore, Defendant maintains that, despite no legal requirement to do so, its policy and practice was to pay for the time at issue and that liability, therefore, cannot be established on a collective or class wide basis, as any unpaid time was the result of manager-specific, location-specific, or employee-specific circumstances, not a company-wide unlawful policy or practice. Defendant also asserted that employees in multiple different positions performed the opening procedures at the various branches, which would make ascertaining a collective and/or class difficult.

Finally, Defendant argues that, even if the time was compensable and violations did occur, it did not violate the law willfully and had a good faith basis for believing its policies were

in compliance with the FLSA, which would preclude a third year of liability and liquidated damages under the FLSA. Named Plaintiff recognizes the risk that without a per se unlawful written policy there is risk in establishing the facts to show a willful violation and lack of good faith.

While Named Plaintiff believes her claims are meritorious, Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process, are inherently uncertain. The proposed settlement alleviates such uncertainty and satisfies the fourth *Girsh* factor, weighing in favor of approving the settlement.

### E.     The Risk of Establishing Damages (*Girsh* Factors 5).

The fifth factor for the Court to consider under *Girsh* is the risk of establishing damages at trial. There is always difficulty in establishing damages where the time at issue was not recorded. This is especially the case in a collective and class action asserted on behalf of more than 800 bank branch employees working at more than 70 different branches, and where the alleged time worked before the employees clock in may not be consistent in amount each day, and is alleged to have been performed by many different employees.

Where an employer fails to keep accurate time records, FLSA jurisprudence establishes a lower bar for plaintiffs who seek to establish damages. *See Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 686-89 (1946); *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1300 (3d Cir. 1991) (where an employee establishes that he has in fact performed work for which he was improperly compensated and shows sufficient evidence to show the amount and extent of that work as a matter of "just and reasonable inference," the court may award damages even though the award "may be only approximate"). However, the employee still must establish through

admissible evidence that she is entitled to *some* damages for improperly compensated work prior to being entitled to the relaxed burden under *Anderson*. *See Gwynn v. City of Phila.*, 719 F.3d 295, 304 (3d Cir. 2013) (affirming summary judgment for employer where employees failed to establish that they actually worked at least some overtime even where employer failed to keep proper records pursuant to the FLSA).

To establish damages on a collective and class-wide basis, Named Plaintiff would need to present a reasonable basis for determining the duration opening procedures took and the number of times each Class Member performed the opening procedures. Pursuant to *Anderson* and its progeny, Named Plaintiff intended to establish the amount of unpaid compensation owed to each Class Member through representative testimony and Defendant's pay and time records. Named Plaintiff would need to hire a statistician to aid in such a process. Defendant likely would employ its own counter-expert to argue that Plaintiff's damage model was incorrect and unreliable. Such a reality poses inherent uncertainty and risk and weighs in favor of settlement. *See, e.g. In re Safety Components Int'l*, 166 F. Supp. 2d at 90 (granting final approval to settlement where "to establish damages, plaintiffs' counsel [would have had to employ] expert witnesses … [and] [t]he defendants likely would have employed their own experts to attack the accuracy and reliability of the models and formulae utilized … [thus] many risks would have faced lead plaintiffs in establishing damages").

Moreover, if Defendant succeeded in establishing its position that the opening/closing procedures took very little time, as it alleges, rather than the time asserted by Named Plaintiff, the damages would be dramatically reduced from the approximately $2,000,000 in alleged damages calculated by Named Plaintiff. Furthermore, if Defendant established that an exempt, salaried manager performed the openings along with a non-exempt, hourly employee instead of

two hourly employees, this also would reduce the damages available even if Named Plaintiff prevailed.

Accordingly, this factor weighs in favor of granting final approval to the settlement.

## F.      The Risk of Maintaining the Class Action Through Trial (*Girsh* Factor 6).

The sixth *Girsh* factor for the Court to consider in determining whether to grant final approval of the settlement, is the risk of maintaining the class action through trial. Here again, this factor weighs in favor of granting final approval of the settlement.[2]

While Named Plaintiff remains confident that she could establish liability and damages on a collective and class wide basis, she remains realistic as to the risks and uncertainty inherent in obtaining collective and class certification on the claims through trial.

As discussed *supra*, the claims in this case seek compensation for off-the-clock work at Defendant's more than 70 branches. While the security procedures performed were largely uniform throughout all locations (and the time keeping system was also uniform), difficulties regarding proving which class members performed such procedures each day and how long each spent engaging in same would arise if this case proceeded through trial. Specifically, the size of

---

[2] It is not clear that this factor remains a relevant factor for the Court to consider in approving a class action settlement. In *In re Prudential Ins*., the Third Circuit stated that "because the district court always possesses the authority to decertify or modify a class that proves unmanageable, examination of this factor in the standard class action would appear to be perfunctory." *In re Prudential Ins*., 148 F.3d at 321. The Circuit Court explained that "there will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *Id.* The *Prudential Ins.* Court determined that this factor "becomes even more 'toothless' after [*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)]." *Id.* The Circuit Court explained that *Amchem* held that, when "confronted with a request for settlement-only class certification, a District Court need not inquire whether the case, if tried, would present intractable management problems." *Id.* (*citing Amchem Prods*., 521 U.S. at 620). The manageability inquiry in settlement-only class actions, the Circuit Court posited, may not be significant. *Id.*

the branches and their physical surroundings varied across the branches, which creates variance in the amount of time it takes an individual to perform the security procedures. While Named Plaintiff intended to prove same through representative testimony, she understands that Defendant would have argued that such variation precluded class certification on damages if not liability.

Moreover, no written policy stating that Class Members had to complete the procedures prior to clocking in without compensation exists, and Defendant maintains that its policy was to compensate them by managers correcting time clock punch times to account for the time spent performing the procedures. Defendant produced time punch records that Defendant argues demonstrates such corrections occurred. Accordingly, Defendant argues that any violations of its policy would have resulted from individualized circumstances such as a specific branch's manager not following the policy rather than a uniform issue impacting the entire class.

Finally, Named Plaintiff remains realistic as to the risks and uncertainty inherent in obtaining class certification on her common law claims through trial to the extent the Court rules that such claims depend on each individual's expectations regarding whether they expected to be paid for performing the opening procedures.

Accordingly, this factor weighs in favor of granting final approval of the settlement.

### G.      The Ability of Defendant to Withstand a Greater Judgment (*Girsh* Factor 7)

The seventh factor for consideration, Defendant's ability to withstand a greater judgment, can be a relevant factor in some cases (*i.e.*, where a defendant receives a significant discount in settling claims and that discount is not related to the strengths and weaknesses of the claim). The Third Circuit has made clear that this factor is not relevant in every matter and affirmed the decision of a district court where the district court found this factor was irrelevant when there

was no evidence in the record that same was "a consideration [which] factored into settlement negotiations." *In re Warfarin Sodium*, 391 F.3d at 540.

Here, Defendant's ability to pay was not a factor in settlement negotiations. Accordingly, this factor is irrelevant and neither weighs for nor against settlement in this matter.

### H.   The Settlement is Within a Fair and Reasonable Range Based Upon the Attendant Risks of Litigation and the Best Possible Recovery (*Girsh* Factors 8 and 9).

Counsel for the parties have determined that this case presents risks for both sides. Despite these risks, Defendant has agreed to settle this claim for a reasonable amount: $525,000. The settlement amount represents a good value of the attendant risks of litigation, because recovery could be greater—or less—if this case was won at trial on a class-wide adjudication and survived through appeal.

A settlement of a collective and/or class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial. *See Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307, *48 (D.N.J. 2006) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial).

If this case were tried, Defendant would argue that not only did it not violate the law but that even if it did, it did not willfully do so and that it acted in good faith and based on a reasonable interpretation of the FLSA. Should the Court determine that Defendant did not willfully violate the FLSA, only a two-year statute would apply. A finding that Defendant acted in good faith and upon reasonable grounds by this Court would preclude liquidated damages. Furthermore, as explained in detail above, Named Plaintiff faced several significant challenges (*i.e.*, establishing liability and damages on a class-wide basis) had they continued litigating. As

Named Plaintiff calculated that Defendant owed the class $1,770,000 in unpaid overtime wages, inclusive of liquidated damages, under the FLSA and its three-year extended statute of limitations and $288,000 in unpaid straight time for the same period of time, the $525,000 settlement before this Court represents a recovery of 45% ($525,000 / $1,173,000) of their unpaid overtime and straight time wages and a 26%[3] ($525,000 / $2,058,000.) recovery of what she and the Settlement Class may have recovered on their best day in court.

This settlement thus satisfies the eighth and ninth *Girsh* factors and weighs in favor of approving the settlement.

\*   \*   \*

Of the nine *Girsh* factors, 8 weigh in favor of settlement approval, and the remaining factor (ability of defendant to withstand a larger judgment (factor 7)) is irrelevant in the context of the instant class settlement. Accordingly, the Court should grant final approval to the class and collective action settlement.

## II.   The Court Should Award The Requested Attorneys' Fees And Costs

Class counsel here seeks an award of fees of 33 1/3% of the total settlement ($175,000.00). Class Counsel also seeks to recover their out-of-pocket expenses incurred in this lawsuit. The requested fee is based on the substantial work Class Counsel performed in the lawsuit and the substantial risk Class Counsel took in bringing and prosecuting the lawsuit. Class

---

[3] Both percentages are based on the total estimated damages of approximately $1,770,000, which was calculated based on an assumption of a 100% opt-in rate for the FLSA collective action. As opt-in rates typically range from 10-30%. If 30% of the putative collective action members opted into the collective action, the FLSA damages, assuming an otherwise best-case scenario, could be as low as $351,900.00. Of course all Class Members who worked in New Jersey during the two-year statute of limitations under the NJWHL would be included in the Rule 23 class action if certified, but with no liquidated damages, the 100% opt-in rate assumption still inflates the damages used to calculate the percentages.

Counsel took this case on a pure contingency and agreed to receive nothing in this matter—including waiving recoupment of all costs—if Named Plaintiff and the Class Members did not obtain a recovery in this matter.

Since the case was filed in March 2019, Class Counsel has diligently litigated this matter without any compensation. During that time, Class Counsel has incurred $5,233.40 in costs relating to the prosecution and settlement of this matter. To date, Class Counsel has dedicated more than 180 hours of attorney time litigating this matter and estimates they will spend 6 hours in the future related to final approval and the administration of the settlement. Miller Decl. ¶ 21. Prior to settling this matter, Class Counsel interviewed both Named Plaintiff and Opt-in Plaintiff Cheeseborough, reviewed and analyzed the sample of class-wide pay and time records, using same to calculate an estimate of class-wide damages. Class Counsel drafted and filed a motion for conditional certification, which precipitated the beginning of settlement negotiations. Class Counsel also reviewed Defendant's written policies regarding timekeeping, wage payment, and security procedures, and served and responded to interrogatories and requests for production. Class Counsel prepared a settlement memorandum prior to mediation with the Judge Thomas I. Vanaskie (Ret.) and, thereafter, participated in two additional settlement conferences before this Court.

The attorneys' fees and costs in this matter are requested as a percentage of the class recovery, which is the favored method for calculating attorneys' fees in class action cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins.*, 148 F.3d at 333; *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663 at *52-53 (D.N.J. 2011) (common fund distribution for attorney's fees in

hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at \*53, *citing, In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); *Lenahan*, 2006 U.S. Dist. LEXIS 60307.

Even in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured … every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d at 256; *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-22 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of the "economic reality" of such arrangement); *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming settlement, overruling objections, and holding that the district court properly used a percentage-of-the-fund calculation in computing fees despite the fact that the underlying statute provided for attorney's fees to the prevailing party).

The Third Circuit has set forth the standards by which to measure and evaluate the reasonableness of proposed counsel fees. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000). Those factors include: 1) the size of the fund created and the number of persons benefitted; 2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; 3) the skill and efficiency of the attorneys

involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the amount of time devoted to the case by plaintiffs' counsel; and 7) the awards in similar cases. *See Gunter*, 223 F.3d 190, 195 n.1; *see also In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (noting that courts should also consider any other factors that are "useful and relevant" under the facts of each case) (citations omitted). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *54. In addition to these factors, the Third Circuit has suggested that courts "cross-check" its fee calculation against the lodestar award method. *Gunter*, 223 F.3d at 195.

### A.   Size of the Fund and Number of Persons Benefitted

In the Third Circuit, courts have approved as reasonable attorneys' fees awards ranging from approximately 19% to 45% of the common fund. *See Gen. Motors*, 55 F.3d at 822. "As a general rule, the appropriate percentage to be awarded to class counsel decreases as the size of the fund increases." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, *19 (internal quotation and citation omitted).

The settlement in the instant matter provides for payment to all members of the Settlement Class, excluding the two (2) Class Members who opted out. This is not a "claims made" settlement and the Class Members are not required to take any action to receive compensation from the settlement other than to sign the settlement check when they receive it, which opts them into the FLSA collective action. The total settlement provides for a settlement payment of $525,000 to be distributed per the Agreement. This is a substantial recovery for Class Members in relation to the value of their claims. *See Chemi*, 2009 U.S. Dist. LEXIS 44860 ($1.2 million for 917 class members); *Rouse v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 49347, *29

21

(E.D. Pa. 2015) (finding this factor satisfied where class counsel requested a 35% award of a $453,900 for 420 class members).

Accordingly, this factor supports the requested fee because of the large number of individuals and the material benefit provided to class members in relation to the value of their claims.

**B.      No Objections to Class Counsel's Fee and Costs Request**

The Notice sent to Class Members informed them that Class Counsel would seek a fee award of 33 1/3% of the Settlement Fund and costs not-to-exceed $5,500.00. Not a single objection was raised with respect to Class Counsel's fee request. Hence, this factor weighs in favor of approving the fee application. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *56.

**C.      Skill and Efficiency of Class Counsel**

The skill and efficiency of Class Counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).

Here, as discussed above, the difficulties faced in this case were great. Yet Class Counsel handled these difficulties in an effective and efficient manner possible, reaching a favorable settlement prior to the risks attendant to class certification and dispositive motion practice that will benefit 813 hourly workers.

Class Counsel has substantial experience in litigating class action wage and hour cases. As discussed in the accompanying affidavit, Swartz Swidler LLC has litigated more than 150

22

putative federal wage and hour class actions in the last 13 years and are currently certified class or collective counsel in numerous wage and hour class actions throughout the United States. Miller Decl. ¶ 12. Swartz Swidler LLC has previously been recognized by courts in the Third Circuit and courts in other circuits as being particularly skilled in this area of the law. *See, e.g. McGee v. Anne's Choice, Inc.*, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. 2014) (finding Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Keller v. T.D. Bank, N.A.*, 2014 U.S. Dist. LEXIS 155889, *14 (E.D. Pa. 2014) (Restrepo, J.) (finding Swartz Swidler to "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, *19-20 (D. Utah 2015) (finding that Mr. Swidler "litigated [the FLSA collective action] for more than two years with competence, diligence, and professionalism … [and finding] that [Swartz Swidler, LLC] has significant experience in litigating wage and hour cases"). Defense counsel is Jackson Lewis P.C., a respected, national law firm, which also has substantial experience in defending employers in collective and class action wage and hour litigation.

Hence, this factor weighs in favor of the proposed fee award.

### D.     Hours Worked and Risk of Non-Payment

In determining the risk of non-payment, courts consider the risk of establishing liability. *In re Cendant Corp.*, 232 F. Supp. 2d at 339. Here, as discussed in detail above, this case poses a number of factual and legal issues, which could have created risks as to liability, class certification, and damages. Accordingly, Class Counsel took substantial risk in litigating this matter. Despite these risks, and as provided by the attached declarations and attorney time

23

records, as of the date of this filing, Class Counsel dedicated more than 180 hours of attorney time on this matter and estimates they will spend 6 hours in the future related to final approval and the administration of the settlement. Miller Decl. ¶ 21. Furthermore, Class Counsel incurred $5,233.40 in out-of-pocket litigation expenses (Complaint filing fee and mediation fees). Miller Decl. ¶ 24.

### E.     Awards in Similar Cases

Percentage awards vary between 19%-45% of the fund, and the court should reduce the percentage as the total settlement amount increases when the reason for the increase is not because of efforts taken by counsel, but instead simply because the size of the class has increased. *In re Cendant Corp.*, 243 F.3d at 736; *Bredbenner*, 2011 U.S. Dist. LEXIS at *54-56; *In re Gen. Motors*, 55 F.3d at 822, *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990). Smaller percentages are reserved for large settlements, typically $100 million or higher, which may involve hundreds of thousands, if not millions of class members, and where class counsel did not incur substantial additional efforts by the inclusion of such persons. *See In re Cendant Corp.*, 243 F.3d at 736.

Accordingly, the requested award is consistent with awards courts in the Third Circuit routinely approve. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS at *60-61; *Rouse v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 49347; *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d at 102 (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same).

Accordingly, this factor also weighs in favor of providing the requested fee award.

### F.      Lodestar Cross-check

Finally, the requested fee is also supported by the lodestar cross-check. The cross-check is performed by calculating the "lodestar multiplier." *In re AT&T Corp.*, 455 F.3d at 164. The lodestar multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar. *Id.* The lodestar multiplier accounts for "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *See In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) (*citing Task Force Report*, 108 F.R.D. at 243) (approving a lodestar multiplier of 4.07). The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In Re Prudential Ins.*, 148 F.3d at 341. The Court may consider reducing the percentage-of-recovery award when the multiplier is too high (*i.e.*, much greater than 4x). *See In re Rite Aid*, 396 F.3d at 306. In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry," *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006), or "mathematical precision," *In re Rite Aid Corp.*, 396 F.3d at 306-07. A court need not involve itself with "a review of actual [attorney] time sheets." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D.N.J. 2010). Indeed, where there have been no objections to the requested fee, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Id.*; *see also Kirsch v. Delta Dental*, 534 Fed. Appx. 113, 117 (3d Cir. 2013). Additionally, while lodestar multipliers are a relevant consideration in determining if the fee request is reasonable, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005).

"In performing the lodestar cross-check, the district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306. Here, Class Counsel seeks a rate of $550/hour for partners; Class Counsel does not request the Court to include work performed by the firm's paralegals in this matter. As discussed below, the rate is reasonable considering the experience and expertise of all Class Counsel.

Mr. Swidler was admitted to the bar in 2007 and Mr. Swartz was admitted in 1997. Together, they have litigated more than 150 putative and certified class and collective wage and hour cases and as discussed above and in the supporting affidavit are experienced in federal wage and hour litigation. Miller Decl. ¶¶ 5-6, 9, 12. Mr. Miller is a partner and was admitted to the bar in 2011 and has 11 years of experience practicing federal employment law and wage and hour collective and class litigation in particular. Miller Decl. ¶¶ 7, 12.

Eight years ago, in 2014, Eastern District of Pennsylvania Court found in June 2014 that $500 per hour was a reasonable hourly rate for partners at Swartz Swidler. *See McGee*, 2014 U.S. Dist. LEXIS 75840; *see also Keller*, 2014 WL 5591033, *15. Since that time, Mr. Swidler has been approved for higher rates in contested applications. *See, e.g., Ayala v. U.S. Xpress, Inc.*, 2019 U.S. Dist. LEXIS 64928 (C.D. Cal. 2019) (awarding $600/hour).

In calculating the lodestar, Plaintiff performed the following calculations:

1. Multiplying the number of Partner hours currently expended (156.7) by the hourly rate ($550.00) to arrive at: $86,185.00;

2. Multiplying the number of anticipated hours to be worked following the submission of this motion (6) by attorneys of Swartz Swidler by the hourly rate ($550) to arrive at: $3,300.00;

26

3.  Adding the above together results in a lodestar of: $89,485.00.

Accordingly, the fee requested is within the lodestar cross-check multiplier, as the cross-check produces a multiplier of 1.96, ($175,000.00 / $89,484.00). Hence, this cross-check verifies that the fee requested is reasonable for the work performed.

For these reasons, it is respectfully requested that this Court grant Class Counsel's fee application.

G.    **The Court Should Award Class Counsel Reimbursement of Their Out-of-Pocket Costs**

"There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. 2004). Moreover, "attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D. Pa. 2001).

Here, Class Counsel incurred $5,233.40 in out-of-pocket costs in litigating this matter. The costs are detailed in each attorney's declaration. No class member objected to Class Counsel recouping their costs from the settlement fund, and the notice informed class members of the costs. No class member objected to the payment of the amount of such costs. Accordingly, Class Counsel respectfully requests to be awarded such costs.

III.    **The Court Should Award The Settlement Administrator Its Fees**

CAC has dutifully complied with its role as the notice administrator and will fulfill its duties in distributing the final notice and settlement payments. The Agreement provides that the fees of administering the settlement will be paid out of the Settlement Fund to the Settlement

Administrator. See ECF 70-4 at p. 30, Section 3. CAC's fees and costs associated with the settlement administration, inclusive of all incurred to date as well as estimated fees and costs associated with completing administration, are $9,695.35. Ex. A, Johnson Decl. at ¶ 13.

Thus, Named Plaintiff respectfully requests the Court order that CAC shall be paid for its services from the Settlement Fund.

## IV.  This Court Should Award The Requested Service Payments For Named Plaintiff Horner and Opt-in Plaintiff Cheeseborough

"The purpose of [service] payments are to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, *63-64. By bringing suit against a large company and having documents publicly filed with their names on them, named plaintiffs who assist in class action litigation "[take] on certain risks. By bringing suit against a major company[,] … they risk their good will and job security in the industry for the benefit of the class as a whole." *Id.*

The Notice informed all Class Member that Named Plaintiff Horner and Opt-in Plaintiff Cheeseborough will request service payments in the amount of Seven Thousand, Five Hundred Dollars ($7,500.00) and One Thousand Dollars ($1,000.00). See ECF 70-4, p. 31. Not a single objection was made to the service payment applications. The service awards are separate from, and in addition to, the portion of settlement award they will receive as Class Members.

Ms. Horner expended time and effort assisting Class Counsel in investigating and prosecuting their claims and preparing for mediation by providing information and documents regarding her duties, wages and hours, and Defendant's policies concerning security procedures. Ms. Horner also answered interrogatories and requests for production. By doing so, Ms. Horner

exposed herself to the risk of retaliation from prospective employers for her involvement in a public federal collective and class action lawsuit against a large employer in the region. Ms. Horner was aware of this risk when she chose to file the lawsuit. Miller Decl. at ¶¶ 25-27.

Opt-in Plaintiff Cheeseborough similarly expended time and effort assisting Class Counsel in their investigation and prosecution of the claims. As the sole opt-in Plaintiff in this matter, Ms. Stephens exposed herself to the risk of retaliation from future prospective employers for her involvement in a public federal collective and class action lawsuit against a large employer in the region. Ms. Stephens was aware of this risk when she chose to file her written consent to join the collective action and submitted a sworn declaration in support of Named Plaintiff's motion for conditional certification. Miller Decl. at ¶¶ 28.

The service awards requested are well within the amounts regularly provided in similar cases. *See, e.g., Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *68 ($10,000 each for 8 named plaintiffs); *Dewey*, 728 F. Supp.2d at 610 ($10,000); *In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practice Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (between $5,000 and $10,000); *In re Elec. Carbon*, 447 F. Supp. 2d 389, 412 (D.N.J. 2006) ($12,000); *In re Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 at *32-*33 (D.N.J. 2005) ($30,000); *see also Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

For these reasons, the Settlement Class has greatly benefited from the efforts of Ms. Horner and Ms. Cheeseborough, and it is accordingly requested that the service payments be awarded as requested.

## CONCLUSION

For the reasons as stated above, Named Plaintiff requests that the Court grant final approval to the settlement, award the requested attorney's fees and costs, administration costs, and service awards as requested.

Respectfully Submitted,

*/s/ Matthew D. Miller*
Matthew D. Miller, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Telephone: (856) 685-7420
Facsimile: (856) 685-7417

Attorneys for Plaintiff

Dated: July 13, 2023